Thank you, Your Honors, and good morning. May it please the Court, I'm Ross Intellisano for Appellant Paul Feinstein. I'd like to reserve three minutes for rebuttal. The case law is clear that removal jurisdiction is based solely on statute. The defendant bears the burden of proving removal jurisdiction. The district court in this case ruled that the FDIC's removal of this case under the Ferreira removal provision and the general removal statute does not appear to be proper. Now, two and a half years after the FDIC improperly removed this matter from FINRA, it has advised this Court that they are not challenging the district court's ruling. So would you agree that the FDIC had a right to have the decision made with regard to this dispute in a different forum? You just think they went about it the wrong way. They should have repudiated the arbitration provision and that would have ended the arbitration and then the claim, if at all, would have had to be pursued through the Ferreira process or what? No, I believe once we put in our claim, we had the right, as long as there's an arbitration clause, that the FDIC could be sued in arbitration and courts have moved the FDIC into arbitration, including this Court, in the Oregon Bureau of Labor case. So no, I do believe that irrespective of whether or not they did it improperly, they would still be in arbitration. But isn't the whole point of this statutory construct, it's almost like a bankruptcy for a bank. You want all the claims to be gathered in one spot and adjudicated and assets distributed. That's true, unless the FDIC is assuming agreements with parties that have underlying arbitration agreements. So in this situation, the FDIC came in, it became the receiver for First Republic Bank, and in that process of doing that, the FDIC assumed all the liabilities of FRIM and FRISC. It assumed all the contracts and then it can disaffirm any contract it wants to, right? Correct, but there are underlying agreements that it did not disaffirm in this situation. But that's what I'm saying. So you think they could have done it, they just did it the wrong way. They should have disaffirmed more contracts. Correct, including the FRIM, the transition bonus agreement between First Republic Investment Management. But the one thing they couldn't repudiate is the FINRA rules, because the reason why we're in FINRA is because First Republic Securities Corporation is a registered broker dealer. Any disputes between a registered broker dealer and a registered rep have to be heard at FINRA. When they took over those liabilities, they sit in the shoes of First Republic Securities Corporation and therefore have mandatory arbitration. So even if they did it properly, the FDICR should still be in the FINRA arbitration. And with respect to First Republic Investment Management and FRISC, it's even more clear and a completely different analysis. In that situation, in May 1st, 2023, the FDIC appointed its receiver, the First Republic. Then there was a purchase and an assumption agreement on the same day. And in that purchase and assumption agreement, the FDIC moved all the assets to J.P. Morgan. So now J.P. Morgan owns the claims against our client, Mr. Feinstein. In May 2023, two weeks after the receiver was appointed, the FDIC substituted in our arbitration for only First Republic Bank, not for FRIM and FRISC, because FRIM and FRISC are still owned by J.P. Morgan, right? If your client wins, whatever the forum is, whose assets are going to satisfy that judgment? If he wins in his claims against the FDIC, it would be the FDIC. But that has nothing to do with FRIM and FRISC's claims against him. And there are $16 million worth of claims in FINRA related to that. Does he have any claims against them, though? Are all his claims claims that would now be satisfied by assets that are controlled by the FDIC? Yes, the answer to that is yes, Your Honor. So what's very important to us is what's happened now is, first of all, now we have the FDIC admitting that it's no proper removal. FRIM and FRISC are now riding the coattails of the FDIC and saying they should be also in federal court. However, we have these underlying arbitration agreements that are still alive with FRIM and FRISC. And after we filed the arbitration in February of 2020, FINRA specifically sent a note and letter to FRIM and FRISC saying all disputes with them had to be arbitrated. And that was before the submission agreement was even signed by FRIM, FRISC, or the FDIC. So there is jurisdiction that's still alive. Now, irrespective of all the machinations by the FDIC to try to be in federal court, it has nothing to do with FRIM and FRISC. There are still live arbitration agreements, including this transition bonus agreement between FRIM and Mr. Feinstein, and also the FINRA rules, because Farsha Public Securities Corp is a FINRA broker-dealer, and they can't vitiate that. So when the FDIC tried to repudiate the submission agreement, they sent that repudiation only on behalf of the FDIC and Farsha Public Bank. They did not send it on behalf of FRIM and FRISC, because they didn't own FRIM and FRISC. J.P. Morgan did. So that specific repudiation says it's not a repudiation on behalf of other parties. Those other parties are FRIM and FRISC with these underlying agreements. So even if the court here finds that the repudiation by the FDIC was proper, which we don't think it was, it has absolutely no effect on FRIM and FRISC. They are still bound by the active agreements. And the Supreme Court, in the Byrd case, found that the FAA leaves no room for discretion, and the district court shall direct the parties to proceed in arbitration if there are active arbitration agreements. And with FRIM and FRISC, there are. Now, what FRIM and FRISC are arguing, let's strike that. So FRIM and FRISC know that that's the case, because after a receiver was appointed, FRIM and FRISC filed arbitrations against 16 other former employees and registered reps, similar to Mr. Feinstein, at FINRA, proving that they still have mandatory arbitration clauses against these employees. Now what they're trying to argue is that there's an intertwining effect between their claims against us and our claims against the FDIC. But the Supreme Court in Byrd specifically rejected that argument and requires that the district court... But this is all about whether FRIM and FRISC should be in arbitration.  Can we go back to whether FDIC should be in arbitration? Sure. Happy to do that. I mean, I think under 12 U.S.C. 1821 D.6.A.2 or whatever says you can continue the action if it's a pre-petition action, but only in two fora, and missing from the list is an arbitration panel. It is certainly a novel concept and a novel argument and a novel issue here. So here's what happened there. The judge, the district court, found that 1821 is not a mandatory venue provision for federal court. And he was following the Holmes decision in the sixth argument. It sure seems like by its language it is, though. Yeah, but I don't think there hasn't been a lot of cases where there is already an arbitration panel. Yeah, but do you have a textual argument that it isn't a venue selection provision? Well, I think if it was intended to be a venue provision, it would specifically say that, and it doesn't. And the statute says to continue an action. It doesn't say to continue a court claim or continue a federal court case. It says continue an action. But it says where that can be continued, right? Excuse me? It says where that can be continued. In a different section it does, but not in a section. No, no, in D.6.A.2 it says can be continued in one of these designated fora, and it lists, I think, the principal place of the district that includes the principal place of business and the district for the District of Columbia. Correct. That is true, Your Honor. That's what it says. But in the only other case that has ever occurred where either side has found where there was a pending arbitration before the removal, the Mapfre case in Puerto Rico, the judge decided that continuation was permissible in arbitration. And here in the lower court, that's what the judge decided to do. But what did they say about the language of the statute? They said it wasn't clear enough to force all petitioners to have to have all their disputes heard in federal court. And there have been lots of cases around the country in which the FDIC has been forced to litigate in an arbitration forum and not in federal court. It just doesn't happen very often because the FDIC doesn't very often remove arbitrations. And here they didn't even have the ability to do that. So here, and what happened in our case is we filed a continuation request at FINRA, which is very similar to what happened in the Mapfre court, and found that that was enough. And the judge found that that was enough as well. And we believe there's no independent basis for either of the defendants to be here in federal court, but specifically First Republic Investment Management and Frisk. And I focus on that because, you know, there's been some argument about whether or not the arbitrators would have the ability to make decisions based on FERREA as a statute. And here, we've already had 10 days of arbitration at FINRA. We have a very sophisticated arbitration panel. They have been asking every three months for an update. There is no doubt that this arbitration panel has the ability to see whether or not any of their defenses or our defenses, FERREA plays a role in. Well, it can't be the rule, though, that in deciding whether to send it back to arbitration, you look at the composition of the panel and see whether you're going to have sufficient belief that they'll get it right, can it? No, I don't. I think you're right. But I think what we've heard from Frim and Frisk is that they believe the only place where anyone can rule on FERREA or any defenses related to FERREA would be in federal court. And what I'm saying is that there are very sophisticated arbitrators who can, of course, rule on statutes. But that rule suggests it turns on the sophistication of the arbitrators. And if we had unsophisticated arbitrators here, it may be a different argument. And I don't think you want to make that argument. I am not solely relying upon that. If, at the end of the day, the court decides to bifurcate this proceeding and forces us to go forward against the FDIC in federal court, and then we are in arbitration with Frim and Frisk, if Frim and Frisk believes and we knock out the case and they get a zero, they have the ability to move to vacate the award in federal court. And that's the proper standard. That's the proper procedure for them. The FDIC would have the same thing. And what all we're asking you to do is, because there's no jurisdiction to actually be here, send everyone back to FINRA. Then the FDIC and First Republic Investment Management and Frisk can make a decision. They can either decide they want to stay at FINRA. They could also ask FINRA to decide whether or not they have jurisdiction or not. Or they can move in court to stay the arbitration. With respect to Frim and Frisk, I think there's no doubt that we're going to stay there. With respect to the FDIC, they might choose to stay there, too. Move in court. Which court? One of those two designated FORA? Yes. It would be in court. Northern District of California, I guess? Excuse me? Yeah. Northern District? Or the Central District. I mean, Northern District would probably be, yes. I mean, if we want to go with the 1821 D6A, it would have to be Northern District of California, right? Well, they moved here in the Central District because the arbitration was venued in Los Angeles. Now, one of the other issues involved in the case is the timeliness of our motion to remand. And this is a clear, clear and erroneous standard for that. We believe, I'm sorry, excuse me, abuse of discretion. We believe that it's nowhere near close to an abuse of discretion. The judge has the ability under Rule 6 of the Federal Rules of Civil Procedure to control his docket, and that's exactly what he did in this case. There's been lots of argument about gaps between the stays. I think the judge, in his order on November 27th, was very clear that the stays continue until December 13th, 2023. And he found, in this case, that there was a minimum amount of good cause and excusable neglect for us to file our motion to remand. And it's our belief that that's nowhere near the abuse of discretion standard. If there's not any more questions, I'm happy to... We have time for rebuttal. Thank you so much. We're splitting time, so we've given you 10 minutes. Yes, Your Honor. We'll stick to that, and then we'll hear five minutes from your co-counsel, or, you know... Good morning, Your Honors. May it please the Court, John Garrisco, representing the FDIC as Receiver for First Republic Bank. The world changes when a bank fails. That's what FIREA does. One of the main things FIREA does when a bank fails is it establishes a comprehensive claims process by which any claimant who has a claim against the receivership puts the claim through the claims process. This Court has made clear in Benson, in Rundgren, and in Shaw that this is a jurisdictional requirement to exhaust the claims process. Mr. Feinstein filed an administrative claim against the receivership, but he didn't follow through. What the statute requires, as this Court has alluded to, it begins with filing a claim. If the claim is disallowed, then we go to 1821d6 for what happens next. And what happens next is there are three choices. The first choice is not at issue here, which is the claimant may request administrative review of the claim. The second choice is that the claimant may continue an action commenced before the appointment of the receiver. And the third option is to file a new lawsuit. As we argued in our brief, we believe that contrary to the map free court that counsel alluded to out of the District of Puerto Rico, that the text of 1821d6 does not allow a finding that an arbitration commenced before the appointment of the receiver is an action that can be continued. Independent of who should be making the decision, what's the statute that allows a removal from arbitration to federal court? What statute would you point to that says this arbitration can be removed to federal court? I get the argument that you could maybe disaffirm the contract and shut down the arbitration by saying we no longer agree to arbitration. Figure it out. Do what you want. File an administrative claim. I'm a little confused about the removal language. Certainly, Your Honor. The FDIC special removal statute is 12 U.S.C. 1819b2b. We argued below that the removal of this arbitration to federal court was proper under 1819b2b. We relied on, most importantly, the precedent from this court and other courts of appeals, recognizing that Congress, in creating this special removal power for the FDIC, intended the FDIC's part to be removed to be much broader than the general removal statute, 28 U.S.C. 1441, and that the FDIC should have every opportunity to have a federal forum. Below, we argued that that language supported removal of this arbitration proceeding. As the court's aware, on appeal, we have elected not to challenge the district court's finding that section 1819b2b did not authorize the removal of Mr. Feinstein's arbitration from FDMRA. Again, though, as the district court . . . that tracks with what the district court found, which is that this removal was not authorized by statute. The district court ultimately held, though, that the FDIC had properly repudiated the one agreement, in this case, that required First Republic Bank to arbitrate at FINRA, which the parties called the submission agreement. And so, it's only FRIM and FRISC, to use the acronyms, I guess, we're throwing around, are subject to FINRA. The FINRA obligation to arbitrate doesn't extend to First Republic? First Republic voluntarily submitted to FINRA jurisdiction by signing the submission agreement. The FDIC then authorized its statutory repudiation power under section 1821e to say, we are not . . . So, the arbitral jurisdiction arose as a result of a contractual choice that First Republic made, not as a result of a FINRA regulation? Correct. First Republic Bank was not a broker. It had no obligation to be in FINRA. It volunteered because, again, because the allegations here are essentially allegations against the failed bank. First Republic Bank entered into the arbitration, as your honors are aware, the note that's one of the issues in the arbitration that is now in court, that note was given to First Republic Bank. So, First Republic Bank came in as a counterclaimant or third-party claimant, whatever nomenclature you want to use, to deal with the note issue. And so, it voluntarily submitted. But that contractual voluntary submission is something the FDIC could repudiate under 1821e, and it did repudiate, as we explained. So, can I ask a question? So, we're dealing with an appeal from the Central District, right? Yes. But the case has been transferred to the Northern District. That is what the district judge . . . his last order transferred the case to the Northern District of California. Just help me understand why it was ever in the Central District. Why and you designated Central District rather than Northern District? Why did you do that? And does it matter? It's not in the record. I don't know, and I don't think it matters, because the case was . . . You would agree now that the case should end up in the Northern District? We do, because Mr. Feinstein was given the option of the two courts designated under 1821d6, either the Northern District or the D.C. District Court. He chose the Northern District, California. So, that is where this case, as the District Court, you know, anticipated when it transferred the case, that's where this case should be decided. And am I clear that the counterclaims . . . you wouldn't be here to address the counterclaims. That's other counsel, is that right? Yes, you're our counsel for the subsidiaries. Okay. And again, if . . . But you think it shouldn't proceed in the Northern District either because of . . . they didn't file timely within the 60 days or not? Well, no, that's correct. The case should be in the Northern District. And then it should be dismissed. Right, the case . . . But that's not before us. Right, the case . . . As we argued in our brief, we believe that 1821d6 does not give . . . does not allow these Mr. Feinstein's claims against the FDIC to continue. That leaves the counterclaims. Right, but you . . . when this . . . if this goes to the Northern District as opposed to back to the arbitration panel, then you're going to go in and file a motion to dismiss? Well, yes, we will. We will file a motion to dismiss. Again, we . . . I mean, I don't think that's a secret. If you think that that's a litigation tactic, you don't need to tell me. No, no, no. Certainly, Your Honor, again, we raised it. We raised it in this . . . here because it's a matter of subject matter jurisdiction. So we raised this issue that even though we understand why the district court did what it did to give Mr. Feinstein an opportunity to pursue his claims, we don't believe that the text of Section 1821d6 allows that. And that would mean that what would remain of the case would be the subsidiary's counterclaims against Mr. Feinstein, which would go to the Northern District of California, we believe. Why do they need to go to the Northern District? That's a good question, Your Honor. I suppose that to the extent that . . . Did the district court order . . . it ordered the entire case up there, though, including the . . . The district court did order the entire case up to the Northern District of California. And again, counsel referred to this issue of intertwining. Because certain of the issues involved in the counterclaims may implicate firea, it may be a situation where ultimately it would be proper to have those decided in one of the courts designated under 1821d6. Right. So as I understand it, if they somehow . . . and I may not be saying this entirely properly, but if they somehow would affect the assets that are now under FDIC receivership, then they basically would then come under coverage of the statute. And so that would make sense that those claims, if that was the case, would belong to the Northern District and then maybe seek to dismiss them or something. But if they don't, if they don't, and it just ends up that FDIC is not implicated at all for a counterclaim, which I don't know if that's true or not. I don't know if we know whether that's true or not. For those claims, I'm just curious as to why they needed to be in the Northern District, what the hook is for transferring those claims. I suppose other than you said that they might be intertwined, but it seems like by definition they wouldn't be intertwined. If they were intertwined, they would be the type of thing that might affect the FDIC's . . . the assets under FDIC receivership. So I'm talking about a world in which they're not. Certainly, Your Honor. And again, the case was transferred as a whole. And really, you know, if the FDIC is by definition out and none of the issues relating to the counterclaim were to implicate the FDIC, then 1821d6 might no longer be a factor. But I think counsel for the subsidiaries might have a better idea of, or might be able to opine as to whether the Central District would be sufficient if this case was limited only to their claims against Mr. Feinstein. Okay. Maybe we'll hear from them then. We ask that the Court affirm the disrecord. Good morning, Your Honors. May it please the Court, my name is Dipanita Amar. I represent the entities that we're colloquially calling Frim and Frisk. I'd like to start by actually answering a couple of the questions from Your Honors. To start with Judge Nelson's question regarding why was the case removed initially to the Central District? I believe the answer is the FINRA arbitration was patenting in Los Angeles, and at the time, Mr. Feinstein had not yet pursued his administrative remedies by filing with the FDIC his request for claims. So if you look at the statute 1821d, that's really what happens after an individual or an entity has pursued claims through the administrative process and thereafter the district hadn't really ripened, if you will. Exactly, Your Honor. That's exactly what happened at the time. After removal, Mr. Feinstein on his voluntarily pursued the administrative process. When he did so, he did so not only with respect to his claims against Frim and Frisk, but also he submitted the entire kit and caboodle, so to speak. He submitted the entire case, including Frim, Frisk, and First Republic counterclaims against him. So the entire thing was submitted through the administrative process, which in my mind is a very clear concession that Mr. Feinstein has made that the whole thing is effectively a claim for assets and liabilities now that belong to the FDIC. Did the FDIC even have jurisdiction over the Frim and Frisk part, though? The FDIC, the FDIC voluntarily, well. The administrative process, I mean. Yes, yes, absolutely. Because what Mr. Feinstein was seeking was a declaration, among other things, that the promissory note that he owed First Republic Bank, he had signed a $7.1 million promissory note, and he was seeking a declaration that he'd be relieved of the obligation. It had jurisdiction over that. I'm talking about the parts that were just the Frim and Frisk parts. So the parts that were the Frim and Frisk parts are also parts where he is alleging acts and omissions of employees of the bank, of First Republican Bank, which has now been put under receivership and belonged to the FDIC. So you're arguing that, I mean, we need to even address that. Can't we get the lower court to address that and not have to do the hard work? I mean, Judge Cole has to do this all the time at his home circuit. So do we really need to address that, or can the Northern District address whether or not the FDIC is implicated by some of these claims, which ones they might be implicated by? If they are implicated by that, then it seems like those would be treated differently than if it just turns out that the FDIC is not implicated. I understand your point, I think, is, well, by submitting to the, by bringing all these claims in the administrative proceeding, and he was impliedly at least acknowledging that that was the case, but can't we let the district court decide whether that's true or not? Actually, Your Honor, I think he was explicitly acknowledging. If you look at the cover letter of his submission, he was explicitly acknowledging that the counterclaims and his claims were all part of the same dispute, and indeed they were. They were asking for relief from acts and omissions of the bank, which by its very terms for ASS belong to the FDIC. I understand, but I'm trying to figure out, because it doesn't even seem that was the reason why, unless I'm missing, that was the reason why we have this sort of interlocutory appeal. The reason for the interlocutory appeal is these tough questions about whether FDIC can remove something from arbitration, and what they do, and what the transfers are, like, this thing you want, and I understand why you want it to be decided by us, but do we need to? That's the only question I'm asking, do we need to? I think, I think the real answer is you don't necessarily need to, but I think it's almost, it's almost implicit in the relief that we are seeking, because one of the pieces of the relief is that the entire action was removed. When you remove an action, you don't just remove some parties and not others, and so I think if the removal was appropriate, and we contend that it was, then the entire action is removed, and it needs to stay together as an entire action. But if the removal was inappropriate, and, and, but they blew, they blew the deadline to ask for it to be returned, so they, but they've also, haven't they also asked for arbitration of, they filed a removal request, motion for removal, but they also filed a request for arbitration, so isn't it possible that the lower court could take claims that, that it had determined do not implicate the FDIC? I don't even know if any of those claims exist, but if we don't decide that, but the lower court does, and then it decides those claims need to go back and be arbitrated before FINRA. I don't think that the district court could decide that the claims, as currently pled, could be decided by FINRA, and the reason for that is the administ, the affirmative defenses in those very claims are the mirror image of our claims. So what Mr. Feinstein is contending in the affirmative defenses, Right, right, so, so that's why you, you're probably right, you may be right, I don't, that, that they're all, they all have some sort of nexus or relationship to the assets under FDIC, in which case, that's, but I'm just saying, I'm assuming, assume for a second with me, which it sounds like you disagree with it, but just assume that there was some claims that did not, that did not affect the assets under FDIC receivership, and so therefore did not, that did not, did not fall under the, under this, this whole regime of removing these claims, and why would those not be sent back for arbitration, not, assume, I'm assuming they blew the trans, they, they blew, they blew the removal deadline, but they do have an independent request for arbitration of those claims. Right, and, and I guess the, the answer is, if, if theoretically there were claims that were completely divorced of any liabilities that have been taken over by the FDIC, you could send the case, the claims back to FINRA? You could, you could split it all up that way. Theoretically, I, I just don't think it works in this case. Okay. Because Mr. Feinstein has conceded that they are all. But back to my original question, we don't really need to decide any of that, right? We can let the district court do the hard work, because we don't like to work hard, so. I'm saying that, yeah. And Dyke, quit getting us on the hook, did you hear that, Dyke? And so, and so, so we, we could send it back and have the district court, because they are, I think as you've been getting at it, they're interrelated, whether or not, the question of whether or not these are FDIC, any of these claims don't implicate the FDIC, and whether they should be arbitrated are kind of related, so. And, and, and also, it feels like we'd be speculating to decide some of these without deciding the whole package. Yeah, I think you could punt that, Your Honor, to the northern district. Well, maybe just leave something for the district court to do. I think she conceded. We're done. Yeah, I think, I, I mean, I think you could theoretically do that. I just think in this case, that doesn't really work. They, Congress made this scheme. No, I, you, you said we could do it. That's all I heard. Well, Your Honor, I think, I think Congress made this scheme for a reason, and, and it. No, it's a fair point. And, and, and, and the reason is that the FDIC is in the driver's seat, and all these claims need to be where they want it to be, and if they've repudiated the agreement with FINRA, I think they, they belong all together. I'm getting cued that my time is up, so thank you. Thank you. But we took you over. Thank you. And by we, he means me. Okay, I might have to have you work a little bit hard talking about the causes of action, because there are six causes of action that Frim and Prisk have against Mr. Feinstein. Five of those six have absolutely nothing to do with. So let, let's just take that as a given. Okay. Why wouldn't we let the district court figure that out? As opposed to. Because you don't, you don't want it to go there anyway. You want us to send everything back. Correct. But, but say we don't agree with that. Why couldn't we just say, you know what, this is complicated. Northern District of California, hey, I know you didn't want this case, but now it's yours. Figure out. I think that is an option for you to do. I just think it's so clear that there is a pending arbitration clause between us and Frim and Prisk that the arbitrators can do that. And it's already set up and they've already heard. But if we send it back to the Northern District California, I mean, I think it seems to me the question is how many of these claims, which ones, what are the implications? That seems pretty detailed work that it seems to be, it would be good to have the district court decide in the first instance. I agree with you that I think it is very detailed work. Although if you looked at the causes of action, there are literally ones about trade secrets, ones about a breach of fiduciary duty. They have absolutely nothing to do, but it's the only. But what, say we were to take it. Now I'm, now Judge Van Dyck's gotten into, into me. What, what if we were to take this on? What would we do? We would remand, we would like. Send some arbitration. Yeah. I don't even understand what we'd do. I, I, I think you would, I think you would, after you look at them and it's, and then it's in the record at page 397, which is their counterclaim. I think you'll find that there are, that, that there are not any that really bring the FDIC into it. These are, there are $16 million worth of claims against my client that have nothing to do with the FDIC. But you're not in any worse position whether we have the district court do that work or whether we do that work. I agree with you. Okay. And can I, can I ask one related, which is, so I think your position is you want us to send everything back to, back to FCRA, right? To arbitration. But if, but assume for a second, I'm asking you to make an assumption that you're not, you may not agree, but assume for a second that we were to say, no, the stuff against, against whether because we think you waived the 60 days or whether because you can't arbitrate, but the stuff against FINRA stays in the Northern District. If we were to, do you agree that you, the claims that you are saying under the assumption that you do agree with, which is that these claims don't affect, don't affect FDIC at all, for those claims, could, could the lower court decide, could the Northern District decide to send those ones to arbitration? And could they split the baby, so to speak, here? I believe the answer to that is yes. And I, I, our claims right now are against the FDIC. And why wouldn't those claims stay? I think I asked, why wouldn't those claims just, it's not clear to me those claims, if they were just by themselves, should have been transferred to the Northern District, right? They should, they could, they would have jurisdiction in the Central District. Our claim against the FDIC, well, I think the biggest reason why is because the repudiation was not a proper repudiation of the, of the submission agreement. And that's a clearly erroneous state standard. But they must, the FDIC was supposed to, and they're required to, give us notification within a reasonable time period of any... We understand your arguments on that. But assuming that, assuming that we thought it was sufficient repudiation, why, those claims were the only ones that existed, under your view that those claims don't implicate the FDIC, then it would have been, then it would have been okay to remove those claims to, to the Central District and not the Northern District? I don't think it matters whether it's the Central District or the Northern District. But even if you find that the repudiation by the FDIC is proper as to the FDIC, there's still, there's still arbitration clauses and other agreements that they are bound by. So they would have had a vis-a-vis... So the removal aspect is not, you're just, you are, you would be, you're moving to arbitrate, because you also moved to arbitrate. You didn't just move to remand, but you also moved to arbitrate. Yeah. And so, so that I think, my thought of that was that takes out the six, that takes out the blowing the deadline aspect of that, of the removal. What, I know you have... And the concept is, we think everyone should be back at FMR because there are live arbitration agreements, but at, at the worst, the FDIC would be in federal court and Frim and Frisk are in arbitration, because there's nothing in their claims against us that, that warrant a federal court to decide. And there are live arbitration clauses. So with, I think what Judge Van Dyke may have been asking, maybe not, I may be wrong about this, but assuming that's right, could, could the Northern District of California be the court that decides to send those other claims, the Frim and Frisk claims, back to arbitration, or should that have been decided by the Central District? I, I believe, I don't know the answer to that question, Your Honor. That's a good question, because it's never really been raised before. I don't know the answer to that question. I believe now that it's been... Transferred. Transferred, that I, I presume it would be the Northern District. We would prefer to have you do the work, to be honest, but... Everybody wants to work on the Ninth Circuit. Look, thank, thank you. You're, you're over, but we took you over as well. But look, thank you, thank you to all counsel for your arguments in this complicated case. It's very helpful, and the case is now submitted. And that concludes our arguments for today. All rise. Hear ye, hear ye. Officers having had business with the Honorable, the United States Court of Appeals for the Ninth Circuit, shall now depart for this court for this session. Stands adjourned.
judges: NELSON, VANDYKE, Cole